NOT DESIGNATED FOR PUBLICATION

No. 123,744

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS G. DEAKINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sumner District Court; WILLIAM R. MOTT, judge. Opinion filed March 18, 2022. Appeal dismissed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Michael R. Serra*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge, assigned.

PER CURIAM: Travis G. Deakins claims the district court erred by sentencing him to prison rather than following the parties' joint sentencing recommendation of probation. We dismiss Deakins' appeal for lack of jurisdiction. The district court imposed the presumptive sentence for Deakins' crime, and we lack jurisdiction to review presumptive sentences. While Deakins tries to shelter under an exception to this jurisdictional bar found in *State v. Warren*, 297 Kan. 881, 304 P.3d 1288 (2013), he fails to satisfy that exception.

1

*Deakins' Plea Agreement*

The State charged Deakins with multiple crimes stemming from allegations that he engaged in sexual acts with G.A., beginning in December 2015 when she was 5 or 6 years old. Deakins entered a plea agreement in which he agreed to plead no contest to one charge: aggravated indecent solicitation of a child. In exchange, the State agreed to dismiss the remaining counts and "join in [Deakins'] request for a dispositional departure to probation for a period of 36 months. The basis for the departure is [Deakins'] amenability to probation based on the recommendation contained in [Dr. Richard] Gaskill's report."

Dr. Gaskill was Deakins' childhood therapist. In his report, Dr. Gaskill chronicled Deakins' struggles with depression, substance abuse, psychological and emotional issues, and his lack of a familial support system. He said Deakins responded well to treatment in the past, and he did not believe prison would be in Deakins' best interests.

Dr. Gaskill contended that Deakins needed mental health, substance abuse, and vocational support "if he is to improve his life and avoid such problems in the future." Dr. Gaskill said it is unlikely Deakins would find such support in the prison population and, instead, he would likely meet others who would "exploit him or join with him in risky immature behavior leading to additional problems." Instead, Dr. Gaskill recommended that Deakins receive outpatient treatment because:

"1. The allegations did not include any known use of physical force or threat to the victim.
"2. The alleged offense does not suggest a chronic fixation on children.
"3. Mr. Deakins is not known to have lived a criminal lifestyle.
"4. Mr. Deakins is clearly aware these allegations and such behaviors is clearly inappropriate and is aware of the negative impact such actions have on the victim from his own childhood experiences.

2

"5. Mr. Deakins has employment and can manage most life demands adequately and has support systems through mental health. Nor is he suffering from a severe mental health disorder.

"6. He lives with his father who is supportive of him obtaining mental health services and continued employment."

But he acknowledged that Deakins' "treatment would need to entail a broad range of services psychological, intellectual, substance abuse, and vocational if treatment were to be successful." Dr. Gaskill ultimately recommended the court place Deakins on probation with random urinalyses tests to assure his sobriety, outpatient therapy, substance abuse treatment, and vocational rehabilitation services.

When discussing the plea agreement at the plea hearing, the district court judge confirmed with Deakins, "You understand that when it comes time for sentencing, I'll listen to the recommendations of the parties, but I'm not required to follow the recommendations of any party. I could sentence you up to the maximum penalty, if I thought that was fair." Deakins confirmed he understood. The plea agreement also contained these acknowledgments:

"10. I understand that the sentencing judge is not bound to follow the plea agreement. The judge may impose any lawful sentence.

"11. I know the sentence I will receive is solely a matter within the control of the Judge, and I know that regardless of the plea agreement between myself, through my attorney, and the County Attorney, the Court is not bound to follow the agreement. . . . I understand that if I enter a plea of guilty or nolo contendere (no contest), the Court may impose against me any and all of the maximum penalties . . . .

. . . .

"14. I understand that despite my plea of guilty or nolo contendere (no contest), I retain a limited right to appeal. I may not directly appeal my conviction, and I understand the appellate courts generally will not entertain an appeal from . . . (b) a presumptive sentence, or (c) the denial of a departure motion."

3

After Deakins pled, the State described the evidence it would present if the case went to trial. The State noted G.A. would testify that in June 2018, Deakins invited her into his trailer, took off her clothes, and put his mouth on her private area, and before that, Deakins showed her videos of adults performing the same act. The State also said Risa Stegman—who interviewed Deakins about the incident—would testify that Deakins acknowledged both that he had shown sexually explicit videos to G.A. and that there was a time in the trailer when G.A. did not have clothes on, got on top of him, and his mouth was on G.A.'s private area. The court accepted Deakins' plea, found Deakins guilty of aggravated indecent solicitation of a child, and the remaining charges were dismissed.

Deakins' criminal history score and the severity level of his crime placed him in a border box on the sentencing grid. The sentencing statute allows the district court to impose an optional nonprison sentence upon making certain border box findings:

"(1) An appropriate treatment program exists which is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and

"(2) the recommended treatment program is available and the offender can be admitted to such program within a reasonable period of time; or

"(3) the nonprison sanction will serve community safety interests by promoting offender reformation." K.S.A. 2015 Supp. 21-6804(q).

See K.S.A. 2015 Supp. 21-6804(f).

*Deakins' Sentencing Hearing*

At Deakins' sentencing hearing, the district judge discussed the presumptive sentence based on the guidelines and acknowledged that Deakins' criminal history score and crime placed him in a border box:

"THE COURT: . . . I'll find the Defendant's criminal history score to be H. Primary crime is the only one of conviction here, Count IV, the level 5 person felony. Regarding that count, I find the presumptive guidelines sentence for that primary offense is prison term of 34 to 48 months, with the [standard] of 36 months. Post-release supervision duration of lifetime. Probation duration of 36 months. You do fall in the— that is the presumptive prison range, right, but you're in a border box.

Both the State and defense counsel recommended the district court make the border box findings based on Dr. Gaskill's recommendation. Defense counsel also noted that Deakins had been attending treatment since Dr. Gaskill's recommendation.

G.A.'s mother addressed the district court, explaining the impact Deakins' actions had on G.A. as well as G.A.'s half-brother. She requested the district court impose the "harsh [*sic*] punishment available."

The judge also asked Deakins if he wished to make a statement on his own behalf or present any mitigation evidence, to which Deakins responded:

"I really don't know what to say right now, in all honesty. I feel—I don't know how to say it without—I feel like things were used against me that wasn't—wasn't true. I just don't know the—I don't know how to speak right now, because I'm very frustrated. I know last time I seen them, [G.A.] came running right up to me and gave me a big, old hug and then took me—led me straight over to my son. My son and I had a really good bond. And I just I haven't seen him in three years. I—nobody understands the hurt that I'm going through right now, and I don't—why things have been put in her—in her head. I know they—she—I threatened her boyfriend, which is my cousin, because they said that—the kids told me that they seen her and Bob in bed together. Been on top of his mom with no clothes on—or their mom. I immediately called and threated them. But I'm going to go ahead and stop right there."

Based on what he heard at the sentencing hearing, the district court judge determined he could not make the necessary border box findings:

"For the offense of aggravated indecent solicitation of a child, level 5 person felony, [I] hereby sentence the Defendant to the standard sentence of 36 months in the custody of the Secretary of Corrections. On the sentence, you can earn up to 15 percent good-time credit and would be subject to lifetime of post-release supervision. With regard to the border box findings, it is clear that the treatment program is available, and the offender can be admitted to the program. Is already in the program. So that can be found. That's obviously a reasonable period of time. It's already happening. As far as it being more effective than prison in reducing the risk of offender recidivism, that's getting trickier. Also, the other one, the non-prison sanction, will serve community safety interests by promoting offender reformation. I don't think I can make either of those findings, from what I've seen in this sentencing. So I'm not going to find that border box is appropriate, and I'm going to impose the presumption of prison and sentence you to prison for 36 months."

Defense counsel asked the district court judge to reconsider his ruling, but he declined to do so:

"[DEFENSE COUNSEL]: . . . Judge, I would just ask for you to reconsider your ruling. I think that the letter provided by Dr. Gaskill established that it would promote offender reformation that—
"THE COURT: I've read—
"[DEFENSE COUNSEL]: —that it would reduce the risk of offender recidivism. So I think that the Court could make those findings based upon Dr. Gaskill's report and allow Mr. Deakins to be placed on probation. He has complied with all the court orders. He has complied about everything that's been required of him while this case is pending. He has not missed one court date. He has not had any contact with anybody he wasn't supposed to have contact with. So, Judge, I would just ask that you please reconsider that, because I do believe border box findings were available. [State's counsel] was even in agreement that Mr.—
"THE COURT: I understand.

6

"[DEFENSE COUNSEL]: —that Mr. Deakins should be placed on probation.

"THE COURT: Yes.

"[DEFENSE COUNSEL]: I think everything is there, and I'll tell you, Judge, I have handled a lot of these cases, and Mr. Deakins has actually been one of my more model clients and is somebody that's very deserving of this opportunity.

"THE COURT: I don't make any of these decisions lightly. I don't send people to prison lightly. You know, coming in, I was on the fence coming in with this one. Probably leaning towards doing it. Everything I heard today, I balanced it and including what Mr. Deakins said. So that's the decision I made, and I'm sticking with it, so I think I would have discretion, of course, to do something different. I think any judge would have, but that's what makes the border box kind of tough. And this hearing is concluded."

The journal entry of judgment comments section noted, the "Court cannot find borderbox is appropriate."

*Jurisdiction*

Generally, appellate courts lack jurisdiction to review a sentence for a felony conviction that is within the presumptive sentence for the crime. See K.S.A. 2020 Supp. 21-6820(c)(1). And the presumptive sentence in border box cases is imprisonment. See K.S.A. 2015 Supp. 21-6804(q); *State v. Whitlock*, 36 Kan. App. 2d 556, 559, 142 P.3d 334 (2006) ("[T]he sentence in border box cases is presumed imprisonment."). Since the district court imposed the presumptive prison sentence, we lack jurisdiction to review that sentence. Further, the sentencing statute which allows courts to impose an optional nonprison sentence upon making the border box findings specifically states that "[a]ny decision made by the court regarding the imposition of an optional nonprison sentence shall not be . . . subject to appeal." K.S.A. 2015 Supp. 21-6804(q), see K.S.A. 2015 Supp. 21-6804(f).

Deakins acknowledges these rules but alleges we can hear his appeal under an exception staked out in *Warren*, 297 Kan. at 885. He says *Warren* provides jurisdiction

7

because he is not challenging his presumptive sentence but, instead, he is claiming the district court erred by ignoring what he characterizes as the parties' "stipulation" to the border box findings. He asks us to vacate his sentence and remand to the district court with directions to give effect to this stipulation and then impose an appropriate sentence.

The State asserts that *Warren* does not apply and disputes Deakins' claim that the parties stipulated to the border box findings. Instead, it characterizes the parties' agreement as a "joint sentencing recommendation" and points out that courts are not bound by parties' sentencing recommendations.

In *Warren*, the Kansas Supreme Court held that appellate courts have jurisdiction over a claim that "the district court wrongly interpreted its statutory sentencing authority." 297 Kan. at 885. The court stated: "[W]hen a district court misinterprets its own statutory authority and explicitly refuses to consider a defendant's request for a discretionary, nonpresumptive sentence that the district court has the statutory authority to consider, the appellate court may take up the limited question of whether the district court properly interpreted the sentencing statute." 297 Kan. 881, Syl. ¶ 1.

Deakins says the parties stipulated to the border box findings and *Warren* applies because the district court misinterpreted its sentencing authority by erroneously believing it was not bound by that stipulation. He says the district court mistakenly believed it could not make the border box findings, even though the stipulation provided it grounds to do so. Deakins claims *Warren* applies because he says the court ignored the parties' stipulation and refused "to *even consider* an optional nonprison sentence." We are unpersuaded.

First, Deakins' claim that the district court misunderstood the effect of the parties' alleged stipulation is different from claiming the district court misinterpreted its authority under the sentencing statute. Deakins' argument focuses on whether the alleged

8

stipulation provides legally binding and factual grounds to support a border box finding, not that the court mistakenly believed it could not even consider a nonprison sentence for Deakins. So even if we accept Deakins' argument at face value, it fails to provide us with jurisdiction over his appeal.

Next, we agree with the State that the parties did not stipulate to border box findings. The plain language of the plea agreement reflects a joint sentencing recommendation, not a stipulation. And as the plea agreement spelled out (which the district court reiterated at Deakins' plea hearing), the district court is not bound by the parties' sentencing recommendations. See *State v. Chetwood*, 38 Kan. App. 2d 620, 624-25, 170 P.3d 436 (2007) (district court not bound by sentencing recommendations).

Last, the record reflects that not only did the district court understand its statutory sentencing authority, but it also conscientiously considered the parties' joint request for a nonprison sentence. The reason the court imposed the presumptive prison sentence was not because it did not understand its sentencing authority but was, instead, because it could not find a factual basis to support the required border box findings. The court understood it must make those findings to depart from the presumptive sentence but found it could not. So the facts fail to satisfy the *Warren* exception as well.

We have no jurisdiction over Deakins' appeal, and he has failed to satisfy the exception he claims. We therefore dismiss his appeal.

Appeal dismissed.